IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Shondell Christopher Patterson, | Case No. 8:10-cv-2955-DCN-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Director Renoldo Myers; Assistant Director Kathryn Harrell; Captain Curtis Bufford; Lt. Kenneth Sligh; Sgt. Jeanne Shull; Officer Kenneth Brown, | |
| Defendants. | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 43.] Plaintiff, a prisoner proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff's Complaint was filed on November 15, 2010 [Doc. 1], and an Amended Complaint was filed on May 25, 2011, which generally alleges violations of Plaintiff's due process rights [Doc. 29]. On August 8, 2011, Defendants filed a motion for summary judgment. [Doc. 43.] On August 9, 2011, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and the possible consequences if he failed to adequately respond to Defendants' motion for summary judgment. [Doc. 44.] On October 24, 2011, Plaintiff filed a response

in opposition to Defendants' motion for summary judgment.[1]  [Doc. 47.]  Accordingly, Defendants' motion is now ripe for review.

## BACKGROUND

At all times relevant to this action, Plaintiff was a pretrial detainee housed at the Alvin S. Glenn Detention Center ("ASGDC").[2]  [Doc. 1 at 2; *see* Doc. 29.]  Plaintiff alleges that on April 15, 2009, Defendant Kennith Brown ("Brown") attacked Plaintiff in his dorm in front of the officers desk, and the incident was captured on the dorm's surveillance video.  [Doc. 29 at 2.[3]]  Plaintiff alleges that, after the incident, he was taken to medical and then to the Special Housing Unit ("SHU"), where he remained for thirty days without receiving a disciplinary hearing.  [*Id.*]

**Prior Action**

In May 2009, Plaintiff filed suit against Brown, alleging Brown used excessive force against Plaintiff during the April 15, 2009 incident.  [*See id.* at 2–3.]  In June 2009, Plaintiff amended his complaint to add allegations against Defendants Renoldo Myers ("Myers"), Assistant Director Kathryn Harrell ("Harrell"), and Captain Curtis Bufford ("Bufford"), as well as Investigator Freeley.[4]  [*Id.* at 2.]  Plaintiff alleged the additional defendants failed to (1) conduct a proper investigation of the incident, (2) provide Plaintiff with a proper and lawful

---

[1] Although Plaintiff's response was filed after the response deadline of September 12, 2011, the Court has considered Plaintiff's response in its analysis.

[2] On January 29, 2011, Plaintiff entered the SC Strong Program, a two-year re-educational program for people with substance abuse problems; therefore, Plaintiff is no longer housed at ASGDC.  [Doc. 11.]

[3] For Docket Entry 29, Plaintiff's Amended Complaint, the Court cites Plaintiff's handwritten page numbers.

[4] Investigator Freeley is not a party to the instant action.

disciplinary hearing, and (3) report to the proper authorities the possible occurrence of a violent felonious criminal act against an employee of the Richland County Sheriff's Department and ASGDC. [*Id.* at 3.] Plaintiff alleged these defendants also conspired to cover up their violations of Plaintiff's rights by fabricating documentary evidence of a disciplinary hearing and altering the surveillance video of the incident between Plaintiff and Brown. [*Id.*] In July 2010, the District Court granted a motion for summary judgment on Plaintiff's excessive force claim and dismissed Plaintiff's remaining claims without prejudice for failure to exhaust his administrative remedies. [*Id.* at 4.]

**Instant Action**

In this lawsuit, Plaintiff alleges he has exhausted his administrative remedies [*id.*], and he sets forth in his Amended Complaint the following allegations against Defendants:

(1) Harrell, Bufford, and Defendants Lt. Kenneth Sligh ("Sligh") and Sgt. Jeanne Shull ("Shull") violated Plaintiff's due process rights by failing to conduct a proper investigation of the April 15, 2009 incident [*id.* at 5];

(2) Sligh violated Plaintiff's due process rights by failing to provide Plaintiff with a proper disciplinary hearing concerning the April 15, 2009 incident [*id.*];

(3) Harrell, Bufford, Sligh, Shull, and Brown

(a) failed to report to the proper authorities the possible occurrence of a violent felonious criminal act, in violation of federal, state, and local laws and ordinances, as well as Plaintiff's civil rights [*id.*] and

(b) conspired to alter the surveillance video evidence of the April 15, 2009 incident, in violation of federal, state, and local laws and ordinances, as well as Plaintiff's constitutional rights [*id.*];

(4) Bufford and Sligh violated Plaintiff's due process rights by their participation in the investigation of the April 15, 2009 incident [*id.*];

(5) Harrell, Bufford, and Sligh violated Plaintiff's civil rights, as well as federal, state, and local law and the rules and regulations of ASGDC, by submitting false documentary evidence to the United States District Court that stated a

3

disciplinary hearing had taken place regarding the April 15, 2009 incident [*id.*];

(6) Myers and Harrell violated Plaintiff's constitutional rights by allowing a cover up of the April 15, 2009 incident between Plaintiff and Brown [*id.* at 6]; and

(7) Myers violated Plaintiff's constitutional rights by creating ordinances, regulations, and customs that made it fundamentally possible to violate Plaintiff's due process and civil rights [*id.* at 6].

Plaintiff seeks damages in the amount of $3,000,000—for violations of his rights and mental anguish resulting from Defendants' lies, verbal slander, and violations of his rights—and to have his day to be heard in court so the truth may come out and justice may be served. [Doc. 1 at 7.]

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir.

1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the

5

deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

6

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

7

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendants contend they are entitled to summary judgment because Plaintiff failed to exhaust administrative remedies prior to filing this action. [Doc. 43-1 at 5–7.] The Court agrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process); *Benfield v. Rushton*, No. 8:06-2609, 2007 WL 30287, at *4 (D.S.C. Jan. 4, 2007) ("It is not the federal court's place to order the prison to change or ignore its established rules and/or time limitations in order to save a prisoner's claims from his or her own failure to fully comply with the established procedures before filing federal lawsuits."). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

With respect to this case, ASGDC has a grievance procedure in place that allows inmates to file written complaints regarding the facility or its operations. [Doc. 43-2 ¶ 8.] The grievance procedure first requires the inmate to fill out an inmate grievance form stating the grievance. [Doc. 1-1 at 1.] An inmate may grieve only one issue per grievance form and may not submit grievances pertaining to court decisions or addressing multiple problems or concerns on the same grievance form. [*Id.*] Grievance forms are picked up from the housing units once per week and are handled by the lowest staff level possible. [*Id.*] Upon receiving a staff response, the inmate can appeal the grievance to the Assistant Director or his/her designee. [Doc. 43-2 ¶ 9.]

Here, there is no dispute Plaintiff submitted grievance forms [*see, e.g.*, Doc. 1-1], but Defendants contend Plaintiff failed to follow the grievance procedures and, therefore,

has failed to exhaust his administrative remedies. Harrell averred, "Plaintiff has made numerous attempts to file grievances regarding this matter, but he has never followed the appropriate steps under the grievance system." [Doc. 43-2 ¶ 10.] Harrell further averred Plaintiff's grievances concerning his claims in this action were untimely because Plaintiff submitted the grievances more than one year after Plaintiff's disciplinary conviction. [*Id.*] Bufford's affidavit echos Harrell's—Plaintiff's grievances were improperly and untimely filed. [Doc. 43-5 ¶ 15.]

Rather than attempt to refute Defendants' argument in his response in opposition, Plaintiff states he would "let his [] complaint and the absolutely ver[]if[i]able facts contained therein to speak for him." [Doc. 47 at 3.] The grievances Plaintiff submitted with his Complaint were filed in July–October 2010, more than one year after the April 15, 2009 incident and Plaintiff's thirty-day disciplinary detention resulting from the incident[5] [Doc. 1-1]; therefore, Plaintiff's grievances were untimely [Doc. 43-2 ¶ 10; Doc. 43-5 ¶ 15]. Further, each grievance contains multiple allegations addressing multiple problems. [*Id.*] Some allegations do not concern Plaintiff's claims in this litigation, and Plaintiff did not address through his grievances every issue underlying the claims presented in this action. [*See id.*] As the Supreme Court has observed,

---

[5] Plaintiff contends Defendants violated his due process rights in several ways, which include (1) failing to (a) conduct a proper investigation of the April 15, 2009 incident, (b) provide Plaintiff with a proper disciplinary hearing, and (c) report the April 15, 2009 incident to a proper investigative body; (2) altering the surveillance video of the April 15, 2009 incident; (3) submitting false evidence that a disciplinary hearing took place; and (4) creating an environment in which his due process rights could be violated. [Doc. 29 at 5–6.] Liberally construing Plaintiff's Amended Complaint, the Court finds that, while Plaintiff has set forth several allegations, his chief complaint is that he was found guilty of a disciplinary charge without receiving a disciplinary hearing. [*See* Doc. 29.] Therefore, the alleged acts relevant to Plaintiff's due process claims alleged in this action were committed around the time of the April 15, 2009 incident.

11

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford v. Ngo*, 548 U.S. 81, 95 (2006). The record before the Court demonstrates Plaintiff's grievances did not comply with ASGDC's grievance procedure. Accordingly, the Court concludes Plaintiff has failed to demonstrate a genuine issue of material fact as to whether he exhausted his administrative remedies and recommends Defendants' motion for summary judgment be granted based on Plaintiff's failure to exhaust.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 17, 2012
Greenville, South Carolina